UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CHRIS BUNGER,<br><br>          Plaintiff,<br><br>      v.<br><br>UNUM LIFE INSURANCE COMPANY<br>OF AMERICA,<br><br>          Defendant. | No. 2:15-cv-01050-RAJ<br><br>PLAINTIFF'S SECOND MOTION FOR<br>JUDGMENT UNDER FED.R.CIV.PRO. 52<br><br>NOTE ON MOTION CALENDAR: **08/25/2017** |

## I.  RELIEF REQUESTED AND OVERVIEW OF MOTION

Plaintiff Chris Bunger respectfully moves this Court under Federal Rule of Civil Procedure 52 ("Rule 52") to enter judgment declaring him disabled under short-term disability and long-term disability insurance policies governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").

The Court previously denied the parties' dispositive motions and remanded this matter to Unum Life Insurance Company ("Unum"), ordering it to inform Mr. Bunger what additional testing or diagnostics it required to make a determination.  Dkt. No. 24 at 22.  Following communications between the parties, Unum again denied Mr. Bunger benefits.  Mr. Bunger filed an unopposed motion to reopen this action, and now seeks judgment in his favor based on the expanded Administrative Record.

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

## II. EVIDENCE RELIED UPON

At the outset of this action, Unum produced the Administrative Record – its claim file regarding Mr. Bunger – in two parts, Bates-stamped "UA-CL-STD" and "UA-CL-LTD" in the lower right corner of each page.[1] The parties and the Court referred to that Record by "STD" or "LTD" followed by the page number. The LTD claim file numbered 513 pages.

Unum produced its expanded claim file on July 17, 2017, Bates-stamped UA-CL-LTD-000001 through UA-CL-LTD-000992, with the word "UPDATED" appearing below that stamp. That document is identified below as "AR" followed by the page number. The first 513 pages are, with a few exceptions, the same as the 513 pages Unum previously produced and identified with the "UA-CL-LTD" footer, although the page ordering differs in some respects (pages of the AR version are frequently numbered one page greater than the "UA-CL-LTD" version), and there is some limited new material at pages AR 1, AR 3 and AR 16. Pages AR 514 through AR 992 are documents added to the Record after the remand order.

Plaintiff will file a paper copy of the expanded Administrative Record with the Clerk, and submit a highlighted working copy to the Court in accordance with LR 10(e)(10).

## III. FACTS

Mr. Bunger incorporates the facts set forth in the Court's July 20, 2016 Order and does not re-state them here. The Order stated in part:

> The Court REMANDS to Unum with instructions to inform Mr. Bunger of what additional testing or diagnostics it requires in order to make an informed decision as to whether Mr. Bunger is able to perform his job functions.

Dkt. No. 24 at 22.

The first time Unum communicated with Mr. Bunger after that Order was on November 14, 2016, when Sean Jones emailed Plaintiff's counsel and requested an "update" regarding Mr.

---

[1] "'Administrative Record' is somewhat misleading if not an outright misnomer . . . because of the connotation that it is a record of out-of-court proceedings before an administrative agency of some branch of government[.] In fact, the record of out-of-court proceedings in this case is a record of proceedings before a private entity[.]" *Doe v. Travelers Ins. Co.*, 971 F. Supp. 623, 636-37 (D. Mass. 1997) *aff'd in part, rev'd in part*, 167 F.3d 53 (1st Cir. 1999).

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

1  Bunger's "overall condition." AR 542. Mr. Bunger responded on November 18, 2016, and

2  asked Unum to tell him what testing or diagnostics it required. AR 596.

3      On November 23, 2016, Mr. Bunger wrote Mr. Jones again. AR 656. He noted that a

4  remand is treated as an appeal under ERISA's claims management regulations and wrote:

> An appeal must be "conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual[.]" *See* 29 C.F.R. § 2560.503-1(h)(3)(iii) and 29 C.F.R. § 2560.503-1(h)(4). You were involved in the adverse benefit determination. I trust you will ensure that another Unum employee assumes responsibility for the remand/appeal from this point forward.

9  AR 657. Mr. Bunger continued:

> In the interest of moving this matter along without any further delay, Mr. Bunger authorizes me to provide the following information for consideration by whomever Unum next assigns to this matter. . . . Since [the remand] Order, Mr. Bunger has been evaluated by a psychiatrist (at the request of the Social Security Administration, as he applied for Social Security Disability benefits), a rheumatologist and a neurologist. He has also seen a psychologist for anxiety.
>
> The psychiatrist, Robert Sise, M.D., was fully aware of Mr. Bunger's disabling fatigue and his diagnoses. Dr. Sise found no disabling psychiatric condition, and "no evidence of malingering or factitious disorder." Mr. Bunger's psychologist, Michael Badger, Ph.D., states that Mr. Bunger's anxiety "is not the cause of his occasionally disabling fatigue, so much as the result of it," and that he has "no reason to doubt the authenticity or accuracy of his stated diagnosis" of lyme disease or chronic fatigue syndrome ("CFS"). Dr. Sise's report and Dr. Badger's statement are enclosed. We do not yet have the chart note from neurologist Lee-Loung Liou, MD, Ph.D., but Dr. Liou told Mr. Bunger when he evaluated him on November 21, 2016 that he had no neurologic disorder. Once we receive that record, we will forward it.

21  AR 657. Dr. Sise's report is at AR 822-26; Dr. Badger's statement is at AR 665-66.

22      In addition to reports from Drs. Sise and Badger, Mr. Bunger's November 23, 2016 letter

23  enclosed a declaration from rheumatologist Richard Neiman, M.D., stating:

> Dr. Taggart has diagnosed Lyme disease, based on borderline studies, and chronic fatigue syndrome. I advised Mr. Bunger that he may never have a clear diagnosis. The differential diagnosis includes chronic Lyme with immunologic response, chronic fatigue syndrome, and fibromyalgia without the tender points. Chronic fatigue syndrome is a debilitating disorder characterized by profound fatigue that is not improved by bed rest and that may be worsened by physical or mental

**Law Office of Mel Crawford**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614   Fax 206.905-2342

activity. Symptoms affect several body systems and may include weakness, muscle pain, impaired memory and/or mental concentration, and insomnia, which can result in reduced participation in daily activities. Fibromyalgia is a type of muscular or soft-tissue rheumatism that principally affects muscles and their attachment to bones, commonly accompanied by widespread musculoskeletal pain, muscle stiffness, sleep disturbances, fatigue, lack of concentration, changes in mood or thinking, anxiety and depression. Chronic fatigue syndrome and fibromyalgia blend together somewhat, and are part of the same disease spectrum. There is no laboratory test for either. . . .

There is nothing unusual about a patient presenting with symptoms such as those Mr. Bunger reports and the physicians being unable to identify a specific diagnosis. There is nothing unusual with a patient having multiple working diagnoses, as here, where the differential diagnosis includes the three diseases identified above.

Since evaluating Mr. Bunger on November 8, 2016, I have reviewed the report of his psychologist, Michael Badger, Ph.D., and a report from psychiatrist Robert Sise, M.D., who apparently evaluated Mr. Bunger at the request of the Social Security Administration. Based on these records, it does not appear there is any psychiatric or neurologic cause for Mr. Bunger's fatigue, pain and cognitive complaints. That makes it yet more likely that his correct diagnosis is chronic fatigue syndrome, fibromyalgia or chronic Lyme disease. I further understand that Mr. Bunger was evaluated by neurologist Lee-Loung Liou, MD, Ph.D., on November 21, 2016, and although I have not seen the chart note of that visit I am told that Dr. Liou found no neurologic disorder. If that is correct, it, too, makes it most likely Mr. Bunger's correct diagnosis is one of those identified above.

The fatigue and pain from those diseases can certainly be disabling. Although I can of course have no direct knowledge of Mr. Bunger's condition before I examined him, his report that he experienced overwhelming fatigue, pain and cognitive fog over the last few years is credible. Based on his psychiatric evaluation, and the statement of his psychologist, there is no reason to doubt Mr. Bunger's reports of his symptoms and no reason to suspect that he is or has been malingering or engaged in symptom magnification.

AR 669-70.

On December 5, 2016, Unum employee Mr. Jones acknowledged receipt of Mr. Bunger's

November 23, 2016 letter and its enclosures, and wrote:

We are continuing our review of Chris Bunger's disability claim and we are in the process of reviewing the additional medical information you have submitted. If this information is sufficient enough to make an updated claim decision we will notify you.

PLAINTIFF'S SECOND MOTION FOR JUDGMENT
UNDER FED.R.CIV.PRO. 52   Page 4

NO. 2:15-cv-01050-RAJ

> If our medical department feels additional information will be necessary to make an updated decision we will notify you of exactly what information would be needed.

AR 672. This letter did not state what testing, diagnosis or treatment Unum required in order to make an informed decision regarding Mr. Bunger's claim. Mr. Bunger therefore filed a motion on December 12, 2016, asking this Court to enforce its order of July 20, 2016. Dkt. No. 34.

On December 13, 2016, Unum "on-site physician" ("OSP") Todd Lyon, M.D. – whose medical opinion supported the original claim denial in 2014 – reviewed the materials Mr. Bunger had provided since the remand and stated that they did "not support a change in prior OSP opinion." AR 674-75. He found the reports from Drs. Sise, Badger and Neiman were "of limited value" in determining "impairment during the 1/2014 timeframe." AR 675.

With respect to any testing, diagnostics or treatment Unum required to decide Mr. Bunger's claim, Dr. Lyon wrote: "In my original review I explained what was missing in regards to medical evidence to support impairment and to support the diagnosis of Lyme disease. I reproduce this below." AR 675. He then copied and pasted a paragraph from his October 31, 2014 report into the claim file. That paragraph addressed only Lyme disease. *See* AR 360-61 (October 31, 2014 report), AR 675.

On December 14, 2016, Mr. Jones wrote Mr. Bunger that the information he sent on November 23, 2016 "does not establish the presence of a confirmed medical condition that would explain the insured's multiple complaints." AR 678. He then addressed the Court's July 20, 2016 Order for the first time:

> There remains a question as to what additional testing or diagnostics would be required to further evaluate Chris Bunger's claim. In our initial decision letter of November 12, 2014 and appeal uphold letter of January 23, 2015, we communicated that the diagnosis of Lyme disease had not been established by CDC criteria. This would include positive Lyme serology test completed by an approved FDA Laboratory, monoarthritis, neurologic findings such as Bell's palsy, also positive MRI finding of the brain could also be an indicator. It would be helpful for your client to provide us the results of Lyme's disease serology testing performed by an FDA approved laboratory. Also, providing MRI imaging as previously described would be helpful. Lastly, although a neuropsychological

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

evaluation performed today would not be able to reconstruct your client's cognitive condition as it existed two years ago, we are nonetheless willing to consider it in our current evaluation if provided.

AR 678.

On receipt of this letter, Mr. Bunger withdrew his motion. *See* Dkt. No. 36. He replied to Mr. Jones the same day, December 14:

So that Mr. Bunger may determine whether and how to spend his resources on medical testing, would you please answer these questions:

1.  Does Unum believe Lyme disease serology testing can demonstrate chronic fatigue syndrome or fibromyalgia?

2.  Does Unum believe an MRI of a patient's brain can demonstrate chronic fatigue syndrome or fibromyalgia?

AR 700. Mr. Jones responded six weeks later, on January 25, 2017, stating:

In response to your question, Chris Bunger claimed to be disabled due to Lyme disease and other conditions including chronic fatigue syndrome. In our non-compensable decision we explained that we had determined Mr. Bunger's disability was not medically supported by the medical information on file. We did however only specifically state that the condition of Lyme disease had not met the criteria established by the Center for Disease Control and Prevention (CDC). In our letter to you on December 14, 2016 we pointed out what acceptable testing/diagnostics would consist of, which we stated would include Lyme serology test and brain MRI findings.

AR 695.

Mr. Bunger wrote Unum again on January 31, 2017. AR 689-93. He provided the chart note from neurologist Lee-Loung Liou, M.D., Ph.D.'s November 21, 2016 evaluation finding no neurologic disorder (AR 707-720); Dr. Traci Taggart's chart notes (AR 722-93); records from David Coots, ARNP (AR 795-808); a declaration describing his symptoms and their effect on his functioning (AR 854-56); and the negative results of January 17, 2017 Lyme disease serology testing from the Mayo Clinic Laboratories (AR 814-16). Mr. Bunger reminded Unum that he had already undergone brain MRIs on January 24 and February 22, 2014, both of which

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614 Fax 206.905-2342

were negative. AR 690; AR 818-19. He advised Unum that Dr. Liou, noting those two MRIs,

believed "that any neurological testing at this point would be of low yield given the improvement

of his symptoms." AR 690, AR 714. Through counsel, Mr. Bunger advised Mr. Jones:

> Mr. Bunger will not obtain a third MRI of his brain when his neurologist sees no need for it and he lacks the financial resources to self-pay for an expensive imaging study not prescribed by a doctor. Given Unum's observation that a neuropsychological evaluation at this time would shed no light on his functioning since August 2014, that Unum did not require such testing, and the expense (typically in excess of $2,000), Mr. Bunger will not seek out such an evaluation.

> Mr. Bunger has provided evaluations from a rheumatologist, a neurologist, a psychiatrist and a psychologist. . . . These evaluations are relevant to chronic fatigue syndrome and/or fibromyalgia, because . . . those are diagnoses of exclusion, and the absence of psychiatric or neurologic explanation for Mr. Bunger's symptoms makes those two diagnoses that much more likely. Further, psychiatrist Dr. Sise and psychologist Dr. Badger did not find Mr. Bunger disabled by any psychiatric condition. I note in this regard that your November 12, 2014 letter denying Mr. Bunger's long-term disability benefits stated, "[o]ur physician also noted that your ongoing complaints remain medically unexplained and could be associated with a psychological condition." . . . That supposition has not been borne out by the facts.

AR 691. Mr. Bunger concluded his January 31, 2017 submission to Unum as follows:

> . . . please consider the following: (1) Dr. Neiman identified three diseases in Mr. Bunger's differential diagnosis, chronic fatigue syndrome, fibromyalgia and Lyme disease. (2) Additional Lyme disease testing, performed after Dr. Neiman's evaluation, was negative. (3) There is no test for chronic fatigue syndrome or fibromyalgia; those diseases are diagnosed by the patient's reports of symptoms and the elimination of other causes. (4) No health care provider has expressed the slightest skepticism of Mr. Bunger's symptom reports. (5) Following evaluation by specialists, no other causes for Mr. Bunger's symptoms, including a psychological condition, have been identified. (6) Despite some improvement, Mr. Bunger continues to have debilitating fatigue on an unpredictable basis, which preclude regular employment.

> Unless Unum has reliable evidence disproving any of the preceding, the rational conclusion is that Mr. Bunger has chronic fatigue syndrome and/or fibromyalgia, and has been, and remains, disabled under the short-term and long-term disability policies. Mr. Bunger respectfully asks that Unum reinstate his benefits under those policies.

AR 693.

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

Mr. Jones responded on February 15, 2017, stating:

> After reviewing the information submitted, it appears that you are confirming to date, there was no diagnostic testing such as positive Lyme serology testing or brain MRI findings to support a diagnosis of Lyme disease. In our prior letter we were not asking for Chris Bunger to undergo a new brain MRI however were only pointing out that if this information had been available it may help support his claim depending on the findings. The MRIs of January 24, 2014 and February 22, 2014 you submitted had already been considered in our prior medical reviews and did not have any significant findings.
>
> Your letter implies that Chris Bunger does have fibromyalgia and/or chronic fatigue syndrome. We are in the process of having our medical department evaluate the new medical information you have submitted in order to determine whether or not this information changes the prior decision that was made on his claim. We will evaluate his claim and determine whether or not his disability was supported for all claimed medical conditions.

AR 869.

Mr. Bunger wrote Unum again on February 17, 2017, and provided a letter from Dr. Taggart stating in part:

> He is doing better overall, but his symptoms are persistent, occurring more days than not, especially fatigue. Additionally, mild mental or physical exertion one day will cause increased fatigue, pain, and difficulty concentrating the next day, preventing him from working and performing activities of daily living on that following day. These persistent symptoms prevent Chris from being able to work at any job on a regular, continuous, and predictable basis.

AR 878-79.

On March 8, 2017, Dr. Lyon reviewed the most recent materials Mr. Bunger had submitted, and found they did "not contain evidence to support any change in prior OSP opinion." AR 883. James Bress, M.D., is another Unum physician who, like Dr. Lyon, made the original decision in November 2014 to terminate Mr. Bunger's benefits. *See* AR 378-80. On March 10, 2017, Dr. Bress reviewed Dr. Lyon's March 8, 2017 report and the records Mr. Bunger provided after the remand order. AR 886-87. He stated there was "no change in my prior opinion and concurrence with the OSP [Dr. Lyon]" that Mr. Bunger was capable of full-time work. AR 887.

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

Unum then had its on-site psychologist, Alex Ursprung, Ph.D., opine whether Mr. Bunger was disabled by a "behavioral health" ("BH") condition. AR 980. Dr. Ursprung wrote on April 19, 2017 that he found "no support for BH R&Ls [restrictions and limitations]." AR 981.

Unum said nothing to Mr. Bunger about these reviews by Drs. Lyon, Bress and Ursprung. Mr. Bunger, having received no response to his February 17, 2017 letter, or to his five-page January 31, 2017 letter and its 20 exhibits, wrote Unum on April 9, 2017 that he would "wait until April 20, 2017 for Unum to advise of its determination. If no decision is made by that time, we will consider his administrative remedies exhausted and return to Court." AR 978.

On April 20, 2017, Unum wrote: "[w]e have reviewed the additional information . . . and it has not changed our prior decision on Chris Bunger's Long Term Disability claim." AR 987. It stated that its physician found "Chronic Fatigue Syndrome was not supported by any documented sore throat, tender lymph nodes, headaches or unrefreshed sleep, which are all normal symptoms of that condition." *Id.* It further stated that "Fibromyalgia was also noted in the records received," but rejected that diagnosis because "Dr. Newman [sic] notes there were no fibromyalgia tender points" and because Mr. Bunger's "CRP (C-reactive protein) which can be an indicator of Fibromyalgia, was at a normal level of .03." *Id.* It concluded, "our physicians opined that the new information received did not provide medical evidence of any physical/organic medical problems that would support changing our prior claim decision." *Id.*

Mr. Bunger then moved to reopen this action on April 27, 2017. Dkt. No. 39.

## III. LEGAL AUTHORITY AND ARGUMENT

### A. This Matter is Subject to De Novo Review and May Be Decided Under Rule 52.

The Court previously determined it may conduct a de novo trial of this matter under Rule 52 based on the administrative record. Dkt. No. 24 at 2-3. Unum's decisions thus receive no deference. *Muniz v. Amec Construction Management, Inc.*, 623 F.3d 1290, 1295–1296 (9th Cir. 2010). Instead, the court performs an "independent and thorough inspection" of the matter. *Silver v. Executive Car Leasing Long–Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006).

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

It "evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." Dkt. No. 24 at 18 (quoting *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F. Supp. 3d 1237, 1251 (N.D. Cal. 2014)). Mr. Bunger has the burden to show disability by a preponderance of the evidence. *Muniz,* 623 F.3d at 1294.

## B. Mr. Bunger Provided the Testing or Diagnostics Unum Required:

The Court ordered Unum to tell Mr. Bunger what "additional testing or diagnostics it *requires* in order to make an informed decision as to whether Mr. Bunger is able to perform his job functions." Dkt. No. 24 at 22 (emphasis added). Unum did not immediately comply. When it finally acknowledged on December 14, 2016 that "[t]here remains a question as to what additional testing or diagnostics would be required," the only testing it identified concerned but one of Mr. Bunger's presumed sicknesses, Lyme disease. AR 678.

Unum initially said MRI imaging might be "helpful" in assessing Lyme disease. AR 678. It later clarified that it was "not asking for Chris Bunger to undergo a new brain MRI however were only pointing out that if this information had been available it may help support his claim depending on the findings." AR 869. When Mr. Bunger responded to Unum's tepid statement regarding a neuropsychological evaluation by stating that he did not intend to obtain such an expensive evaluation because Unum dismissed its value and had not "required" it, Unum said nothing more on the subject. AR 691.

Mr. Bunger obtained the only testing Unum required, Lyme serology testing. The negative result presumably made the other diagnoses in Dr. Neiman's differential diagnosis, chronic fatigue syndrome and fibromyalgia, more likely. Unum sidestepped Mr. Bunger's question asking whether it believed Lyme disease serology testing or a brain MRI could demonstrate chronic fatigue syndrome or fibromyalgia (AR 700), saying, "We did however only specifically state that the condition of Lyme disease had not met the criteria established by the Center for Disease Control and Prevention (CDC)." AR 695.

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

**C. There Are No Laboratory Tests for CFS or Fibromyalgia.**

The Ninth Circuit recently reiterated that "fibromyalgia and chronic fatigue syndrome are not established through objective tests or evidence." *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 696 (9th Cir. 2017) (citing *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 678 (9th Cir. 2011) and *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 877 (9th Cir. 2004)). *See also* AR 669, at ¶ 6 (rheumatologist Dr. Neiman stating there are no laboratory tests for these illnesses).

**D. Unum's Medical Opinions Were Created During a Procedurally Flawed Process.**

ERISA's claims management regulations, 29 C.F.R. § 2560.503-1, apply to court-ordered remands. *Robertson v. Standard Insurance Company*, 218 F.Supp.3d 1165, 1169 (D. Or. 2016) (adopting the Department of Labor's interpretation of its regulations). When a court remands to a claims administrator, the administrator's review is treated as an appeal of a denied claim. *Id.*, 218 F.Supp. 3d at 1169. An appeal review must be "conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual[.]" 29 C.F.R. § 2560.503-1(h)(3)(ii) and (h)(4).

Unum employee Sean Jones made the initial adverse benefit determination. *See* AR 391-96 (letter denying LTD benefits); *see also* AR 271-73, AR 315-316, AR 326-27, AR 355-56. Mr. Jones continued to conduct the appeal/remand even after Mr. Bunger advised him of *Robertson's* holding that a remand is treated as an appeal, and pointed out that his involvement violated 29 C.F.R. § 2560.503-1(h)(3)(ii). AR 656-57. Further, Mr. Jones then proceeded to consult with Drs. Lyon and Bress during the appeal/remand, although both were involved in the original benefit termination. AR 360-61; AR 378-80. That, too, violated ERISA's claims management regulations, which state that "the health care professional engaged for purposes of a consultation" during an appeal "shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual." 29 C.F.R. § 2560.503-1(h)(3)(v) and (h)(4).

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

1   The regulations do not explain why the person conducting an appeal review, or the health

2   care professionals consulted during that review, must not be the original decision-makers.

3   Common sense suggests it is more difficult to find one's own decision wrong than to find that

4   another person erred.  Violations of this regulation constitute more than "technical

5   noncompliance," and can prejudice a claimant.  *Crosby v. Blue Cross/Blue Shield of Louisiana*,

6   No. CIV.A. 08-693, 2012 WL 5493761, at *8 (E.D. La. Nov. 13, 2012) (citing *Lafleur v. La.*

7   *Health Serv. and Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009)).

8       At no time before Mr. Jones issued a final denial on April 20, 2017, did he identify the

9   Unum doctors reviewing the matter or provide their reports so Mr. Bunger might respond.  One

10  can reasonably question whether Mr. Jones, Dr. Lyon and Dr. Bress were motivated to engage in

11  the "meaningful dialogue" ERISA requires, *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461,

12  1463 (9th Cir. 1997), and were open to finding their own prior determinations wrong.

13      The actual substantive records Unum generated following the remand order comprise

14  only a handful of pages.  Of those, two pages are Dr. Lyon's December 13, 2016 report (AR 674-

15  75); two are Dr. Lyon's March 8, 2017 addendum (AR 883-84); two are Dr. Bress' March 10,

16  2017 report (AR 886-87); and three are Dr. Ursprung's "behavioral health" report finding no

17  psychiatric disability (AR 980-82).  The expanded administrative record does not document any

18  discussion of, or reflection upon, the remand order.  There is no indication Dr. Lyon, Dr. Bress,

19  or any other medical professional employed by Unum even reviewed the order.  The record

20  documents no conference or meeting in which Unum discussed or considered what testing or

21  diagnostics it needed to make a determination regarding Mr. Bunger's claim.  Rather than taking

22  any proactive steps to comply with the remand order, Unum operated only reactively – reviewing

23  the information Mr. Bunger volunteered and then having its same in-house doctors who urged

24  claim denial in 2014 declare that their original opinions were correct.

25      Because Unum conducted a procedurally flawed review the medical opinions it generated

26  during that process are entitled to no deference and little weight.

27

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

**E. The Opinions of Examining Doctors Warrant More Weight than Those of Non-Examining Consultants.**

Generally, the opinions of doctors who did not examine a claimant merit less weight than those of examining doctors. *See, e.g., Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009) (insurer's use of a "pure paper" review "raise[s] questions about the thoroughness and accuracy of the benefits determination."); *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1109 n.8 (9th Cir. 2003) ("On *de novo* review, a district court may, in conducting its independent evaluation of the evidence in the administrative record, take cognizance of the fact . . . that a given treating physician has 'a greater opportunity to know and observe the patient' than a physician retained by the plan administrator.") (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003)); *Eisner v. The Prudential Ins. Co. of Am.*, 10 F.Supp.3d 1104, 1115 (N.D. Cal. 2014) (courts "routinely weigh" records of treating physicians "more heavily than they do reports and file reviews from paid consultants who never examine the claimant or talk to the claimant's treating physicians."). Unum could have examined Mr. Bunger if it chose to do so. AR 429.

In-person evaluations can be particularly important with diseases like CFS and fibromyalgia, which lack objective tests and rely on the patient's reports. *See Salomaa*, *supra*, in which the physicians who examined the plaintiff concluded he was totally disabled by CFS. *Id.*, 642 F.3d at 676. "The only documents with an 'M.D.' on the signature line concluding that he was not disabled were by the physicians the insurance company paid to review his file. They never saw Salomaa." *Id. See also*, *e.g.*, *Bosley v. Metro. Life Ins. Co.*, No. C 16-00139 WHA, 2017 WL 2543805, at *8 (N.D. Cal. June 13, 2017) (in context of a claimant with CFS "the opinions of [the claimant's] treating physicians remain more credible and probative . . . than the opinions of MetLife's medical director and physician consultants."); *Laurie v. United of Omaha Life Ins. Co.*, No. 3:14-CV-01937-YY, 2017 WL 975947, at *15 (D. Or. Jan. 23, 2017), *report and recommendation adopted*, No. 3:14-CV-01937-YY, 2017 WL 970262 (D. Or. Mar. 13,

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

1  2017) (given CFS diagnosis, insurer "should have had a board certified rheumatologist perform

2  an IME to help determine the veracity of [the claimant's] self-reported symptoms.").

3        Board certified rheumatologist Dr. Neiman evaluated Mr. Bunger on referral from Dr.

4  Taggart.  He found Mr. Bunger's report of his symptoms veracious.  AR 670.

5  **F. Substantial Evidence Establishes that Mr. Bunger Was and Remains Disabled.**

6        A person is "disabled" under the STD policy if "limited from performing the material and

7  substantial duties of your own job . . . due to your sickness[.]"  STD-367.  The LTD policy

8  defines "disabled" as follows:

9
10     -  you are limited from performing the material and substantial duties of your
      own job or a reasonable alternative offered to you by your Employer due to
      your sickness or injury; and

11
12     -  you have a 20% or more loss in your indexed monthly earnings due to the
      same sickness or injury.

13
14  After 9 months of payments, you are disabled when Unum determines that due to
the same sickness or injury, you are unable to perform the duties of any gainful
15  occupation for which you are reasonably fitted by education, training or
experience.

16  AR 429.  The preponderance of the evidence is that Mr. Bunger was and remains disabled under

17  all three of these definitions.

18  **1. Mr. Bunger Has a Sickness.**

19        In its remand order, the Court observed that "Unum appears to conflate the issue of

20  whether Mr. Bunger is sick with the issue of whether Mr. Bunger has been properly diagnosed,"

21  noting that if he had not been correctly diagnosed that "does not mean he is not sick."  Dkt. No.

22  24 at 21.  Dr. Neiman states there "is nothing unusual about a patient presenting with symptoms

23  such as those Mr. Bunger reports and the physicians being unable to identify a specific

24  diagnosis."  AR 669.  Nor is there anything "unusual with a patient having multiple working

25  diagnoses[.]"  *Id.*  The "diagnostic process with respect to chronic fatigue syndrome can evolve

26  over time[.]"  *Kuhn v. Prudential Ins. Co. of Am.*, 551 F. Supp. 2d 413, 427 (E.D. Pa. 2008).

27

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

1    As it did during the underlying claim, Unum treats Mr. Bunger's CFS diagnosis with a

2    light hand, writing on February 15, 2017, that Mr. Bunger "implies" he has CFS.  AR 869.  That

3    understates matters.  Dr. Taggart noted CFS on a Unum "Attending Physician's Statement" three

4    years earlier, on February 7, 2014.  STD-049.  She did so repeatedly thereafter; *see* Dkt. No. 13

5    at page 13 (listing over 20 dates in 2014 when she identified CFS as a diagnosis).  Dr. Taggart

6    continued to diagnose CFS during 2015 and 2016.  AR  723, 725, 727, 761, 765, 767, 769, 773.

7        Rheumatologist Dr. Neiman included CFS in his November 8, 2016 differential

8    diagnosis.  AR 669.  He also included fibromyalgia, noting that chronic fatigue syndrome and

9    fibromyalgia "blend together somewhat, and are part of the same disease spectrum." *Id*.  He

10   explained that while fibromyalgia was previously diagnosed by evaluating tender points at 18

11   fixed locations on a patient's body, under revised criteria the diagnosis now may be made "based

12   on the patient's fatigue and diffuse pain without examination of tender points." *Id.  See also*,

13   *e.g.*, *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 n.10 (9th Cir. 2015) ("in contrast

14   to the 1990 criteria, the 2010 diagnostic criteria do not require a specific number of tender points

15   in specific locations.").  Fibromyalgia is "commonly accompanied by fatigue, sleep disturbances,

16   lack of concentration, changes in mood or thinking, anxiety and depression." *Lang v. Long-Term*

17   *Disability Plan of Sponsor Applied Remote Tech., Inc*., 125 F.3d 794, 796 (9th Cir. 1997).

18       As the Court noted, "Unum never seems to suggest that Mr. Bunger's complaints are

19   untrue, just that those complaints have not been properly tested, diagnosed or treated."  Dkt. No.

20   24 at 21.  Since the Court made that observation, a rheumatologist, a neurologist, a psychiatrist,

21   an Advanced Registered Nurse Practitioner and a psychologist all evaluated Mr. Bunger.  None

22   expressed any doubt or skepticism of his reports.  Neurologist Dr. Liou diagnosed "Fatigue,

23   unspecified type," ICD-10 code R53.83.  AR 707.  ARNP David Coots did the same.  AR 795.

24   Psychiatrist Robert Sise, M.D., noted Mr. Bunger's medical history as positive for chronic

25   fatigue syndrome and Lyme disease, and found "no evidence of malingering or factitious

26

27

PLAINTIFF'S SECOND MOTION FOR JUDGMENT
UNDER FED.R.CIV.PRO. 52   Page 15

NO. 2:15-cv-01050-RAJ

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

disorder." AR 823, AR 825. Psychologist Dr. Badger saw Mr. Bunger at least 18 times, and found "no reason to doubt the authenticity or accuracy of his stated diagnosis." AR 665.[2]

The Unum STD and LTD policies require a person to have a "sickness." They do not require a person to have an unvarying diagnosis. Whatever its name, Mr. Bunger has a sickness.

### 2. Unum's Speculation of a Psychiatric or Neurologic Cause Was Incorrect.

Unum faulted Dr. Taggart for not referring Mr. Bunger "to a psychological or neurological evaluation that could have identified the cause of the claimant's symptoms and defined the extent, if any, of claimant's impairment as a result of such symptoms." Dkt. No. 16 at 14 (internal quotation marks and citation omitted). It faulted Mr. Bunger because he "never obtained the behavioral health evaluation and treatment recommended by Dr. Taggart." Dkt. No. 17 at 5-6. It urged that because Dr. Taggart "did not rule out a psychological cause of Mr. Bunger's fatigue," the "medical records fail to support a diagnosis of Lyme disease or CFS or any other illness or disease" – and thus Mr. Bunger's action should be dismissed. *Id*. at 6.

During the remand period, Mr. Bunger underwent multiple evaluations. Neurologist Dr. Liou found no neurologic disorder. AR 714. Psychiatrist Dr. Sise, after examining Mr. Bunger and hearing his account of disabling fatigue and cognitive problems, found "no evidence of malingering or factitious disorder." AR 825. He found an unspecified depressive disorder, an unspecified neurocognitive disorder and an unspecified anxiety disorder, and stated that those "psychiatric illnesses may be secondary to Lyme Disease but other indeterminate etiologies may also contribute." *Id*. Treating psychologist Dr. Badger stated that the anxiety for which he was treating Mr. Bunger was "not the cause of his occasionally disabling fatigue, so much as the result of it[.]" AR 665. These evaluations addressed, and dismissed, Unum's concern that the primary cause of Mr. Bunger's symptoms is neurologic or psychiatric in nature. Unum itself concluded he had no disabling psychiatric illness. AR 981.

---

[2] After the remand, Unum obtained a 72-page investigative report (AR 897-968) detailing Mr. Bunger's "Likely Associates" and "Possible Criminal Records (None Found)." AR 897. It looked for eviction, accident and bankruptcy records. *Id*. That investigation, and Unum's review of Mr. Bunger's Facebook account, AR 893-95, produced nothing impugning Mr. Bunger's veracity.

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

**3. Mr. Bunger's Symptoms Disabled and Continue to Disable Him:**

The Court stated in its remand order that if "Mr. Bunger's complaints, and Dr. Taggart's assessments, are to be believed," then Mr. Bunger would not be able to work eight hours a day developing website content. Dkt. No. 24 at 21. The expanded record provides no reason to disbelieve or discount Mr. Bunger's complaints or Dr. Taggart's assessments. Certainly the examining health care providers identified no reason to do so.

Mr. Bunger described his symptoms and their effect on his functioning in a declaration dated January 30, 2017:

> It is difficult to describe the fatigue I experience. It makes my body, especially my legs, feel very heavy. Movements feel slow and awkward, sometimes like I do not have full control of my body. Many times, even if I slept through the night, the fatigue is still there the next day, almost as if I hadn't slept at all. I feel groggy in the morning, and it takes me some time, often some hours, to feel fully awake. Some days I don't feel that I have ever completely gotten awake and clear – I spend the day feeling foggy and weighted down. I feel drained, like I don't have any energy. Being overwhelmed with this fatigue interferes with every aspect of my life. The term "Brain fog" describes my mental condition on bad days – it is hard for me to keep my focus, to read, and to keep my attention on what I am trying to read or do. The fatigue makes me irritable and thin-skinned. I believe it affects the rest of my health, so that, for example, it takes me two weeks to get over a simple head cold. I have had a lot of anxiety since becoming sick. Before January 2014 I was very healthy, and never could have imagined not being able to work and care for my family. I worry a lot about what is going to happen to me and how I can provide for my family. I have seen a counselor about this, which has been somewhat helpful.
>
> My condition has improved since 2014, but I have not yet reached a point where I have consistent energy and strength. I continue to have good days and bad days. It is generally not possible to know if any particular day will be a good day or a bad day, although if I exert myself very much on one day, I am usually much more fatigued the following day.
>
> On good days I can get some things done, accomplish some tasks. For example, I can attend to my children by myself for a few hours. I am able to take short walks, and do simple exercises or calisthenics. I can do some household chores. On bad days, I feel wiped out and am unable to do chores or tasks. It takes all my energy to do the simplest things. It is difficult for me to read or write, it can be

**Law Office of Mel Crawford**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

difficult even to get out of bed and get dressed. On those days I struggle to interact with my family, and have to rely on my wife or other family members to care for the children. Also on bad days it is hard for me to keep my focus in active environments, such as large stores or other places with a lot of people and activity going on. I have about as many good days as bad. One of the worst things about my condition is that it is so unpredictable, whether I will have a good day or a bad day.

In addition to fatigue, I continue to have pain, usually in my feet, ankles, hands, legs, and back. Often this is just an ache or a sore/stiff feeling in my joints, and is not enough by itself to keep me from being able to do things. I occasionally have some muscle pain on either side of my body. Generally it is just a tenderness or tightness in my muscles, but I've experienced a handful of episodes of a seizing or stabbing pain so bad that it caused me to buckle over. There have also been a handful of times in the past year that I have had back pain so severe that I could only lie down. If my only symptom was this pain, I would be able to work. It is the fatigue which prevents me from doing so.

. . . If my health would allow, I would absolutely return to work. But there is no way I could have held a full-time job during this time that I have been off work due to my sickness. Because I do not know when I will have a good day or a bad day, because I have bad days about half the time, and because I am exhausted the day after I exert myself, I could not hold a job that required me to be present on a regular and predictable basis, day after day.

AR 854-56.

Dr. Taggart has described the good day/bad day nature of Mr. Bunger's sickness. She states that his "symptoms are persistent, occurring more days than not, especially fatigue." Noting that "mild mental or physical exertion one day will cause increased fatigue, pain, and difficulty concentrating the next day," she concludes that he remains unable to "work at any job on a regular, continuous, and predictable basis." AR 879. Dr. Sise stated:

The claimant's ability to perform simple and repetitive tasks is fair, ability to perform detailed and complex tasks is fair to limited, and ability to perform work activities on a consistent basis without special or additional instructions is fair to limited based on the claimant's performance on the cognitive exam.

The claimant's ability to perform work duties at a sufficient pace is fair to limited based on the claimant's abilty to perform activities of daily living.

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

The claimant's ability to maintain regular attendance in the workplace and complete a normal workday without interruptions is fair to limited based on his current functional status and recent work history.

AR 826.

"Regular job attendance is a requirement of virtually all jobs[.]" *Delaney v. Prudential Ins. Co. of Am.*, 68 F. Supp. 3d 1214, 1229 (D. Or. 2014). Mr. Bunger's unpredictable good days and bad days leave him unable to meet that requirement. *Delaney* noted that "in the social security context, legions of cases rest in whole or in part on vocational expert testimony that missing two or more days of work per month renders a claimant unemployable." *Id*. at 1229-30, citing among other authority *Ghanim v. Colvin,* 763 F.3d 1154, 1159 (9th Cir. 2014) (missing two or more days per month would preclude work as a kitchen helper or commercial cleaner); *Brewes v. Comm'r of Social Sec. Admin.,* 682 F.3d 1157, 1163 (9th Cir. 2012) (missing two or more days per month would make claimant unemployable as a photocopy machine operator, laundry worker, or janitor); *Yurt v. Colvin,* 758 F.3d 850, 855 (7th Cir. 2014) (vocational expert testimony that "in competitive employment workers were expected to be on task 80 to 85 percent of the time and could not miss more than one or two days per month and up to approximately ten per year").

Like the claimant in *Nagy v. Grp. Long Term Disability Plan for Employees of Oracle Am., Inc*., Mr. Bunger has met his burden to "show that, whether diagnosed or not, his or her injury or sickness is disabling." 183 F. Supp. 3d 1015, 1027–28 (N.D. Cal. 2016).

**4. The Court Should Declare Mr. Bunger Disabled From His Own and From Any Occupation.**

When Mr. Bunger filed this action on June 29, 2015, he was still – but barely – within the LTD policy's nine-month "own job" definition of disability. AR 429. Had Unum paid him LTD benefits, it would have begun doing so on October 5, 2014, and the nine-month "own job" period would have ended on July 5, 2015, one week after he filed his complaint. From July 6, 2015 forward, Mr. Bunger was disabled if "unable to perform the duties of any gainful occupation" for which he was "reasonably fitted by education, training or experience." AR 429.

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

Because he was still under the "own job" definition of disability, Mr. Bunger's 2014 *pro se* appeal to Unum did not address his abilty to work at "any occupation." Generally, an ERISA plaintiff "must avail himself or herself of a plan's own internal review procedures" by an appeal to the insurer "before bringing suit in federal court." *Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir.1995). This "exhaustion requirement" serves "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980); *see also Diaz*, 50 F.3d at 1483.

The ERISA statutes do not themselves require exhaustion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 961 n. 2 (9th Cir. 2006). Nor is exhaustion a jurisdictional requirement. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 n. 2 (9th Cir.2008). Accordingly, a "trial court has discretion to adhere to the exhaustion requirement or apply a judicially-created exception to excuse the failure to exhaust administrative remedies." *Smith v. Weekly Disability Income Ins. for Employees of Friends of KEXP*, No. C09-0937-JCC, 2010 WL 890068, at *2 (W.D. Wash. Mar. 9, 2010). The most "familiar examples" of courts excusing exhaustion are when "resort to the administrative route is futile or the remedy inadequate." *Id.*, (quoting *Amato*, 618 F.2d at 568). The futility exception "is designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail." *Diaz*, 50 F.3d at 1485.

In *Smith*, this Court held the plaintiff need not appeal a denial of long-term disability benefits, because the insurer had already denied short-term disability benefits – making "any attempt to administratively claim long-term benefits and receive a favorable 'total disability' determination demonstrably doomed to fail." *Smith v. Weekly Disability Income Ins.*, 2010 WL 890068, at 3. Judge Coughenour found a Fourth Circuit case persuasive authority on the subject:

> In *Smith v. Metropolitan Life Insurance Co*., 274 F.App'x. 251, 258 (4th Cir. 2008), an ERISA claimant made an administrative claim for long-term disability benefits, but only under the "own occupation" total disability standard; not the "any gainful occupation" standard which, similar to the case at bar, applied after a

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

set period of time passed under the less restrictive standard. The Fourth Circuit held that the claimant was excused from exhausting the administrative remedies under the stricter standard, because it would have been futile for the claimant to argue that he could not perform any gainful occupation months after the insurance company determined that he could perform his own occupation.

*Smith v. Weekly Disability Income Ins.*, 2010 WL 890068, at *3. *Smith v. Metropolitan Life Insurance Co.* reasoned that –

> Met Life had already explained to Smith on several occasions that he could perform his own occupation. This determination "necessarily precluded [Smith]from arguing with a straight face to the same insurance company that he was unable to perform ... any occupation." *Dozier v. Sun Life Assurance Co.*, 466 F.3d 532, 535 (6th Cir. 2006). *See also Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 449 (2d Cir. 2006) (noting that plan's decision that insured was not disabled from his own occupation "necessarily implies a decision that he was not totally disabled from 'any occupation' ").

*Id.*, 274 F. App'x 251 at 258 (alterations in original).

In *Young v. Regence BlueShield*, No. C07-2008RSL, 2008 WL 4163112 (W.D. Wash. Sept. 2, 2008), this Court excused a plaintiff from exhaustion because the insurer's position was "known and would have resulted in the denial of an appeal." *Id.* at *3 (citing *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991), *overruled on other grounds by Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1042 (9th Cir. 2014)). Judge Lasnik found in *Young* that "the purposes of the exhaustion requirement would not be served by requiring exhaustion[.]." *Id.* (citing *Amato*, 618 F.2d. at 567).

Both *Smith* cases, and *Young*, are instructive here. Unum's position is known. Another appeal to Unum – asking it to determine Mr. Bunger is unable to perform any occupation, when it maintains he can perform his own – will inevitably result in a denial. *See Foster v. Blue Shield of California*: "a clear position taken in litigation can provide grounds for excuse from exhaustion." *Id.*, No. CV 05-03324, 2009 WL 1586039, at *5 (C.D. Cal. June 3, 2009) (citing *Horan*, 947 F.2d at 1416). Another appeal will not "help reduce the number of frivolous lawsuits under ERISA." *Amato*, 618 F.2d at 567. It will simply require Mr. Bunger to file another action or seek to reopen this one. The other purposes of exhaustion – promotion of

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

1  consistent treatment of benefit claims, providing a nonadversarial method of claims settlement or

2  minimizing the costs of claims settlement – also would not be served by requiring Mr. Bunger to

3  go through a futile process.

4      The court in *Carrier v. Aetna Life Ins. Co.* declined to address the plaintiff's entitlement

5  to "any occupation" benefits when the insurer only had denied "own occupation" benefits, but

6  that was because it found "nothing in the Administrative Record for the Court to resolve this

7  factual issue." *Id.*, 116 F. Supp. 3d 1067, 1084 (C.D. Cal. 2015). That does not describe the

8  situation here. The medical information now before the Court was generated in late 2016, well

9  into the any occupation period. This includes Dr. Taggart's statement that Mr. Bunger is unable

10 "to work at *any* job on a regular, continuous, and predictable basis." AR 879. (emphasis added).

11 It includes Dr. Badger's November 12, 2016 statement that Mr. Bunger was not "capable of

12 performing consequential work-related activities on a sustained basis at this time," AR 665, and

13 Dr. Sise's conclusion that Mr. Bunger's ability to "perform work duties at a sufficient pace is fair

14 to limited based on [his] ability to perform activities of daily living." AR 825. And it includes

15 Mr. Bunger's account of his symptoms and their effect on his functioning – that, about one-half

16 of the time his fatigue and other symptoms leave him "wiped out" and unable to perform basic

17 tasks or chores, or to interact with his family. AR 855.

18     These are proper circumstances for the Court to exercise its discretion and find that

19 exhaustion would be futile. There is sufficient evidence in the record from which to find Mr.

20 Bunger is unable, due to his symptoms, to work at any occupation on a predictable and sustained

21 basis. As in *Duperry v. Life Ins. Co. of N. Am.*, "it is apparent from the record that [the

22 claimant's] inability to work was not the result of particular duties specific to [his] regular

23 occupation," and the Court can therefore rule on the "any occupation" standard. 632 F.3d 860,

24 876 (4th Cir. 2011). *See also Oliver v. Coca Cola Co.*, 497 F.3d 1182, 1200-1201 (11th Cir.

25 2007), *vacated in part on petition for reh'g*, 506 F.3d 1316 (11th Cir. 2007) (district court may

26 rule on a beneficary's entitlement to "any occupation" benefits even though the plan

27 administrator has not yet done so). Further, Mr. Bunger is now two years into the "any

PLAINTIFF'S SECOND MOTION FOR JUDGMENT
UNDER FED.R.CIV.PRO. 52   Page 22

NO. 2:15-cv-01050-RAJ

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

occupation" period and has been without disability benefits since August 2014. Requiring him

to go through a futile administrative appeal would result in yet more time passing before he and

his family benefit from the safety net Costco's LTD Plan was meant to provide.

## IV. CONCLUSION

Mr. Bunger has met his burden to show that, more probably than not, he was disabled

under the STD Plan from August 30 to October 4, 2014; disabled from his own job under the

LTD Plan from October 5, 2014 to July 5, 2015; and disabled from any occupation from July 6,

2015 through the present. He respectfully asks the Court to enter judgment so declaring.

Proposed Findings of Fact and Conclusions of Law are submitted herewith.

RESPECTFULLY SUBMITTED this 3rd day of August 2017.

LAW OFFICE OF MEL CRAWFORD


By *s/Mel Crawford*
    Mel Crawford, WSBA # 22930
Attorney for Plaintiff
melcrawford@melcrawfordlaw.com

PLAINTIFF'S SECOND MOTION FOR JUDGMENT
UNDER FED.R.CIV.PRO. 52   Page 23

NO. 2:15-cv-01050-RAJ

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

1

## CERTIFICATE OF SERVICE

2     I certify that on the date noted below I electronically filed this document entitled

3  Plaintiff's Second Motion for Judgment Under Rule 52 with the Clerk of the Court using the

4  CM/ECF system, which will send notification of such filing to the following persons:

5     Attorneys for Defendants:

6
   D. Michael Reilly
7  David Howenstine
   LANE POWELL, PC
8  1420 Fifth Ave, Ste 4100
   Seattle, WA 98101-2338
9  Email:  reillym@lanepowell.com
            howenstined@lanepowell.com

10

11     DATED this 3rd day of August 2017 at Seattle, Washington.

12

13                                    s/*Mel Crawford*
                                      Mel Crawford
14

15

16

17

18

19

20

21

22

23

24

25

26

27

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342